In the Matter of the Probate of a Paper alleged to be the Last Will and Testament of CECELIA L. BOOTH, Deceased.

GERALDINE JOSEPHINE TIMONEY, Proponent and Appellant, JOSEPH A. BOOTH, Contestant and Respondent.

While, where the signature of a party to a written instrument appears at the end thereof, in the usual way in which such instruments are signed, the legal presumption arises that the signature was written for the purpose of finally executing the instrument, in the absence of a signature at the end of the instrument, no such presumption arises from the fact that the name appears written by the party in the body of the instrument.

A writing was presented for probate as the will of B. At the time of her death she resided in New Jersey. It was written by the testatrix, and commenced with her name, but was not signed at the end by her. It contained no attestation clause, but was signed by two witnesses. There was no evidence tending to show that, at the time the witnesses signed, the testatrix directly or indirectly, by word or gesture, referred to her name in the first line of the instrument as her signature. No act of hers was proved from which it could be inferred that the name written there was intended to be in execution of a completed will; it was proved, however, that she said to one of the witnesses: "This is my will, take it and sign it." The New Jersey statute provides that wills must be " in writing, and shall be signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will and testament in the presence of two witnesses at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator." *Held*, that conceding the common-law rule prevails in New Jersey, under which, if a person writes his name in the body of a will with intent to execute it in that manner, the signature is as valid as if subscribed at the end, the burden was upon the proponents of showing that the name was so written with that intent; that the evidence was insufficient to sustain a finding that such was the intent; and that probate of the instrument was properly refused.

*In re Higgins* (94 N. Y. 554); *In re Phillips* (98 id. 267); *In re Hunt* (110 id. 278), distinguished.

(Argued April 7, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 22, 1890, which reversed a decree of the Surrogate's Court of the county of New York, and directed said

Surrogate's Court to annul and revoke the probate of a paper alleged to be the last will and testament of Cecilia L. Booth, deceased; also appeal from order of the same date, which denied a motion for a new trial of a question of fact tried by a jury, as hereinafter stated.

On the 16th of June, 1884, Cecilia L. Booth, a resident of the state of New Jersey, and the wife of the contestant, wrote in her own hand a paper which was signed by two witnesses, of which the following is a copy:

" If I, Cecilia L. Booth, should die within the year 1884, I leave to my sister, Geraldine Josephine Timoney, all money due me from my late father's deceased will, also my wearing apparel and furniture, and I also leave to my little nephew, Albert Philip Timoney, all money deposited in the Emigrant Savings Bank in my maiden name, Cecilia L. Hatfield.

" Witnessed by

" Amelia Kurrus,

" Mamie Clifford.

" *June* 16*th*, 1884."

August 10, 1884, Mrs. Booth, then a citizen of the state of New Jersey, died in that state, leaving personal property in the city and county of New York.

Geraldine Josephine Timoney presented the instrument to the Surrogate's Court of the city and county of New York as the last will and testament of Cecilia L. Booth, and asked to have it admitted to probate as such, which was contested by the husband of Mrs. Booth. The surrogate held that the instrument was well executed under the laws of New Jersey, and admitted it to probate. (3 Dem. 414.) On an appeal to the General Term the decision of the surrogate was reversed and a new trial directed by a jury. (38 Hun, 644.)

The following questions were submitted to the jury, all of which were found in the affirmative, except the eighth, which was answered in the negative:

" 1st. Was the paper, propounded as the last will and testament of Cecilia L. Booth, deceased, written by her?

" 2d. If such paper was written by said Cecilia L. Booth, where was it written?

" 3d. Was the name ' Cecilia L. Booth,' appearing on the first line of said paper, written or made by Cecilia L. Booth, the deceased wife of the contestant?

" 4th. If said name ' Cecilia L. Booth,' was written by Cecilia L. Booth, deceased, was it written by her in the presence of two witnesses who were present at the same time, and who subscribed their names to said paper as witnesses in the presence of said Cecilia L. Booth?

" 5th. If the name ' Cecilia L. Booth,' was written by Cecilia L. Booth, deceased, did she acknowledge the writing or making thereof in the presence of two witnesses, who were present at the same time, and who subscribed their names to said paper as witnesses in the presence of said Cecilia L. Booth.

" 6th. If said paper and said name of ' Cecilia L. Booth ' was written or made by said Cecilia L. Booth, deceased, did she declare the same to be her last will in the presence of two witnesses, present at the same time, who subscribed their names thereto as witnesses, in the presence of said Cecilia L. Booth?

" 7th. Was said Cecilia L. Booth, at the time of making or executing said paper, mentally competent to make or execute a last will and testament?

" 8th. If Cecilia L. Booth, at the time of making or executing said paper, was mentally competent to execute a last will and testament, was such paper procured under undue or improper influence or fraud?"

The proponent applied for a judgment at the General Term, which was denied, and the contestant for a new trial, which was granted, on the ground that the answer to the fifth question was not sustained by the evidence. (13 N. Y. S. R. 344.) Upon the second trial by jury, all of the issues were again found in favor of the proponent, but the General Term again denied proponent's motion for judgment, and denied the contestant's motion for a new trial on all of the questions; but held that the answer of the jury to the fifth question was unsupported by the evidence, and directed a new trial of that

question only. Upon the third trial by jury they were directed to answer the fifth question in the negative. Upon appeal to the General Term, the direction was sustained, and it was held that the will was not entitled to be probated.

*J. Stewart Ross* for appellant. The will was properly offered for probate before the surrogate of New York county. (Code Civ. Pro. §§ 2470, 2611; *Russell* v. *Hart*, 87 N. Y. 19.) The will offered for probate having been wholly written by the testatrix, her name, written by her at the beginning thereof was a sufficient signing of the same under the statute of New Jersey. (*Lemayne* v. *Stanley*, 3 Levinz, 1; *Selton* v. *Coulter*, 2 Va. Cas. 553; *In re Miles*, 4 Dana, 1; *Adams* v. *Field*, 21 Vt. 256; *Allen* v. *Everitt*, 12 B. Mon. 371; *Armstrong* v. *Armstrong*, 29 Ala. 538; *Watts* v. *Public Admr.*, 4 Wend. 168; *Fritz* v. *Turner*, 46 N. J. Eq. 516.) The facts proven show a good acknowledgment of the will. There could have been no acknowledgement of the will without an acknowledgement of the signature. (*In re Higgins*, 94 N. Y. 554; *In re Phillips*, 98 id. 267; *In re Fisher*, 4 Dem. 277; *In re Hunt*, 42 Hun, 436; 110 N. Y. 278; *Adams* v. *Field*, 21 Vt. 256; *In re Beckett*, 103 N. Y. 167; *In re Austin*, 45 Hun, 1; *Willis* v. *Mott*, 36 N. Y. 486, 491; *In re Lantry*, 5 N. Y. Supp. 501; *In re Look*, 7 id. 298.) If the signature of Cecilia L. Booth to the will was made by her, it is immaterial as to the acknowledgement. (*Errickson* v. *Fields*, 3 Stewart, 635; *Crowley* v. *Knapp*, 42 N. J. L. 297; *Ayres* v. *Ayres*, 43 N. J. Eq. 566.) Upon an appeal to this court, even if there be findings of fact on which the judgment appealed from could be sustained, yet if there be contrary findings of fact more favorable to the appellant, the appellant shall have the benefit of those findings, and the judgment be reversed. (*Conselyea* v. *Blanchard*, 103 N. Y. 222; *Brevoort* v. *City of Brooklyn*, 89 id. 12; *Schwinger* v. *Raymond*, 83 id. 192.)

*B. F. Watson* for respondent. In case the General Term should have reversed the surrogate's decree admitting said

paper to probate as a valid will, such action would have been justified in law upon the ground that there was involved in the appeal to the General Term no controverted questions of fact and, therefore, there remained only the question of law, and the General Term should have decided it as a question of law without the intervention of the jury. (*In re Hunt*, 100 N. Y. 278 ; *Mead* v. *Mead*, 11 Barb. 611 ; *In re Martin*, 98 N. Y. 193.) Substantially, justice was done by the final order reversing the surrogate's decree, and the reversal was proper and inevitable, because the evidence before the surrogate does not show due execution according to the law and practice of the state of New Jersey ; on the contrary it was proved affirmatively that there was no such due execution and the evidence was not controverted. (*Howland* v. *Taylor*, 53 N. Y. 628 ; *Catlett* v. *Catlett*, 55 Mo. 340 ; *Waller* v. *Waller*, 1 Grat. 454 ; *Ramsey* v. *Ramsey*, 13 id. 664 ; *Roy* v. *Roy*, 16 id. 418 ; *Compton* v. *Milton*, 7 Halst. 70 ; *Mickle* v. *Mattock*, 17 N. J. L. 88 ; *Ludlow* v. *Ludlow*, 35 N. J. Eq. 480 ; *In re McElwaine*, 3 C. E. Greene, 499 ; *Munday* v. *Munday*, 15 N. J. Eq. 290.) Under the circumstances of this case, some distinct recognition by the decedent, in the presence of the subscribing witnesses, of the name " Cecelia L. Booth," in the top line of the alleged will, as and for her signature intended to authenticate the instrument, must be affirmatively proved. (*In re Mackay*, 110 N. Y. 611.) The surrogate of New York county had no jurisdiction to grant probate of the instrument dated June 16, 1884, as a will of personal property in the first instance. (*Prentice* v. *Savage*, 13 Mass. 23 ; *Dalrymple* v. *Dalrymple*, 2 Hogg, 59 ; *Schermerhorn* v. *Schermerhorn*, 20 Wog. 47 ; *Lynn* v. *Townsend*, 33 N. Y. 558 ; *Sherman* v. *Judd*, 3 Brad. 419 ; *In re Roberts*, 8 Paige, 519 ; *Lawrence* v. *Elmendorf*, 5 Barb. 73 ; *White* v. *Howard*, 52 id. 296 ; 46 N. Y. 144 ; *Mills* v. *Fogal*, 4 Edw. 559 ; *Churchill* v. *Prescott*, 3 Brad. 233 ; *Isham* v. *Gibbons*, 1 id. 69 ; *Myer* v. *Weil*, 1 Dem. 71 ; Code Civ. Pro. §§ 2694–2696 ; *Russell* v. *Hart*, 87 N. Y. 19.) If it was error in the General Term to order a jury trial, upon the assumption that the reversal should be

founded upon a question of fact, the General Term, in such case, was authorized to reverse that decree for error in law. (*In re Martin*, 98 N. Y. 192; *In re Hunt*, 110 id. 278.) The verdict is not conclusive. (*Marvin* v. *Marvin*, 41 N. Y. 10; *Vermilyea* v. *Palmer*, 52 id. 471; 2 R. S. 66, §§ 57–59; 608, §§ 90, 98; *Mason* v. *Jones*, 2 Brad. 325; *Sutton* v. *Ray*, 72 N. Y. 482.) The question as to what the law and practice of New Jersey was, in the premises, was an issue of fact to be proved by evidence. (*In re Gerard*, 95 N. Y. 256.)

FOLLETT, Ch. J. At common law, if a person wrote his name in the body of a will or contract with intent to execute it in that manner, the signature so written was as valid as though subscribed at the end of the instrument. (*Merritt* v. *Clason*, 12 John. 102; *S. C.*, *sub nom. Clason* v. *Bailey*, 14 id. 484; *People* v. *Murray*, 5 Hill, 468; *Caton* v. *Caton*, 2 H. L. 127; 2 Kent's Com. 511; 1 Dart's V. P. [6th ed.] 270; 1 Jar. Wills [Big.'s ed.] 79.)

We shall assume, without deciding, that under the laws of New Jersey a will may be legally executed if the name of the testator is written by him in the body of the instrument with intent to so execute it. The statute of that state which pre-scribes the mode in which wills shall be executed, provides: "All wills and testaments * * * shall be in writing and shall be signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will in the presence of two witnesses present at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator." Under this statute it was held *In re McElwaine* (18 N. J. Eq. 499), that "four things are required: First, that the will shall be in writing. Secondly, that it shall be signed by the testator. Thirdly, that such signature shall be made by the testator, or the making thereof acknowledged by him in the presence of two witnesses. Fourthly, that it shall be declared to be his last will in the presence of these witnesses. Each and every one of these requisites must exist. They are not

in the alternative. The third requisite contains an alternative, but one of these alternatives must exist. The second requisite, the signing by the testator, must exist. The second alternative of the third, to wit, that he acknowledged 'making of the signature,' will not supply the want of the second. Where there is no proof as to the making of the signature, such acknowledgment is sufficient evidence that he made it, and would prove compliance with the requisite of signing by him. But when it is clear that the testator did not sign the will, this acknowledgment is not sufficient. The words of the act are clear, and the object is equally clear, and requires this construction to the words." This language was used in respect to a will to which the name of the testatrix was subscribed by one of the subscribing witnesses at her request, in her presence and in the presence of both subscribing witnesses. After this was done the testatrix said, "that was her name and seal," but did not acknowledge it to be her signature, nor did she then declare that the instrument was her will; and it was held not to have been executed in accordance with the statute.

Wherever the name of a testator appears, whether in the body or at the end of a will, it must have been written with intent to execute it, otherwise it is without force. When a testator, or the maker of a contract, subscribes it at the end and in the manner in which legal instruments are usually authenticated, a presumption arises that the signature was affixed for the purpose of creating a valid instrument. But when the name is written near the beginning of the document, where, as a rule, names are inserted by way of description of the person who is to execute it, and rarely as signatures, it must, before it can be held to have been inserted for the purpose of validating the instrument, be proved to have been written with that intent.

The record contains no evidence tending to show that Mrs. Booth, directly or indirectly, by word or gesture, referred to her name in the first line of the paper as her signature, nor is there evidence of any act on her part from which

it might be inferred that the name there written was intended to be in execution of a completed will, and her simple declaration to Mamie Clifford, one of the subscribing witnesses: "This is my will; take it and sign it," standing alone, is insufficient to sustain a finding or verdict, that the name "Cecilia L. Booth," written by her in the first line of the document, was there written with intent that it should have effect as her signature in final execution of a will.

We are referred by the learned counsel for the appellant to *In re Higgins* (94 N. Y. 554); *In re Phillips* (98 id. 267); *In re Hunt* (110 id. 278), in which it was held that when a testator subscribes a will at the end and exhibits it and the signature to the subscribing witnesses, declares it to be his last will and testament and requests them to sign it as witnesses it is a sufficient acknowledgment of the signature. Those cases are quite different from the one at bar, in this: The signatures having been subscribed at the end, in the usual way in which instruments are finally authenticated, the legal presumption arose that the signatures were written for the purpose of finally executing the documents, but as we have before shown, there is no legal presumption arising from the face of this instrument that the name was written as a signature, nor is there evidence outside of the paper from which such an inference can be safely drawn. It has been the object of the statutes of the various states prescribing the mode in which wills must be executed, to throw such safeguards around those transactions as will prevent fraud and imposition, and it is wiser to construe these statutes closely, rather than loosely, and so open a door for the perpetration of the mischiefs which the statutes were designed to prevent.

The judgment and orders appealed from should be affirmed, with costs, payable out of the estate.

All concur.

Judgment affirmed.